Good morning. May it please the court. Again, my name is Leonard Feldman and I'm counsel for the appellants Dale and Karen Conley. As I mentioned, I'd like to reserve four minutes for rebuttal, but I'll keep track of my own time. Unless the court prefers otherwise, I'd like to begin with the issues that the Conleys have raised in their appeal and then turn to the issue that the defendants have raised in their cross appeal. At its simplest level, the Conleys' appeal is controlled by the Montana Supreme Court's opinion in Staples. The court there held that an insurer must provide a defense to its policyholder unless there exists an unequivocal demonstration that the claim against the insurer does not fall within the insurance policy's coverage. And it also explained that courts are to liberally construe the allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated. And the trial court's fundamental error in this case was that it did not correctly apply these legal principles to the underlying complaint and to the Conley's subsequent correspondence. The complaint, as we explain in our briefing, alleges anxiety. It also alleges serious injuries. The Conley's subsequent correspondence, in turn, refers to, quote, a serious toll on the Conley's health. Now, going back to the language in Staples, both documents, the allegations that I just mentioned, are broad enough to include physical manifestations, particularly when they're liberally construed in favor of the policyholders required by Staples. And equally important and equally dispositive, neither document unequivocally demonstrates the absence of physical manifestations, which is what Staples requires to properly deny defense. So when you apply the Staples standard to the documents at issue in this appeal, it's clear that the duty to defend was triggered and that the district court erred in finding otherwise. Now, on top of the allegations in the complaint and the correspondence, and in addition to it, we have the duty to investigate. Duty to investigate kicks in if there is any uncertainty whatsoever about whether the duty to defend was triggered. That's an obligation that's imposed by Montana Code Section 33-18-201, and it's also an obligation that this court has recognized in its opinion in Trout. Had the defendants here investigated, they would have learned that the Conley's anxiety was accompanied by severe weight loss and diarrhea, which, as we explain in our briefs, is very, very typical of anxiety. In fact, you cannot as a physician diagnose somebody with anxiety unless there are these physical manifestations. And that, of course, is the overwhelming inequity in this case, is that the defendants here have never disputed, nor can they, that there were, in fact, physical manifestations. And as a result, under the Wagner-Ellsworth decision, there were, in fact, there was, in fact, a duty to defend here. And instead of providing that defense, the insurance company concluded that there was no covered event. They effectively interpreted all of these documents against their policyholder. What are the damages that you want? Well, the damages, Your Honor, are set out very clearly in the district court's decision in Nielsen, as well as the Montana Supreme Court's decision in the Staples decision. And what Montana law says very clearly is that when there is a duty to defend, the insurance company becomes liable for the ensuing harm, which in this case- That's what I'm trying to understand. The principal harm that you're trying to recover for is anxiety? No, not at all, Your Honor. There's a stipulated judgment in this case. And because the insurance company did not honor its duty to defend, its policyholder was left without a defense and ultimately agreed to a stipulated judgment. So under the- It was sort of a collusive judgment, wasn't it? The policyholder said, on paper we'll give you a judgment for everything you want on your agreement, never to enforce it against us. So they were paying zip in actuality, but it gives you now this huge claim against the insurance company. That's right, but I wouldn't describe it as collusive. I mean, there was a hearing to determine the reasonableness of the asserted damages. The trial court has an obligation to make sure that there's evidence supporting the damages. And there is, of course, case law in Montana approving this very procedure. That's never been an issue in this case, but it is common to proceed in this fashion when, as here, there's no defense provided. I'm sorry, I may not have been very clear, but I thought that your principal injury, that Conley's principal injury in this, in dealing with Mr. Stolt, the accountant who was the insured, I understand, that was that they got bad tax advice and lost a lot of money, bad planning advice and lost a lot of money. They got bad tax advice. They lost money as a result of the bad tax advice. They suffered severe anxiety as a result. The accountant, right, they sued the accountant. The accountant gave them like a multimillion-dollar judgment while taking an assignment. Correct. Or they took an assignment. Who got assigned the claim against the insurance company? The Conleys got assigned the Stolt's claim against the insurance company. So the Conleys have stepped into the Stolt's shoes. And as I mentioned, there is substantial case law in Montana that this is how these sorts of claims are addressed. Well, I understand that, but my problem is that this is a liability policy that has as a trigger bodily injury, and your clients are actually claiming damages that are in the nature of malpractice. That's right. But that's not what the parties. So the question is why did the insurance company have a duty to defend them? Because under Wagner Ellsworth, the issue here is bodily injury. There was an allegation of bodily injury caused by the malpractice. So therefore, because the malpractice caused some anxiety and diarrhea, therefore they had a duty to defend. Correct. That's exactly right. And that's what Staples holds. And it's consistent with what I would describe as the paramount importance of the duty to defend under Montana law. I practice in a lot of jurisdictions in Montana, I think, is the most robust in terms of how it handles issues like this. Staples being a very good example of it. Pablo is another case that involves similar issues. Insurance companies in Montana need to provide a defense, or they run the risk that they will be held liable for stipulated judgment. And it's not hard to avoid it. Simply provide the defense as required by Montana law. The diarrhea and loss of weight was not raised at the time of the denial of the duty to defend. It was raised later, right? That's correct. And so taking the record at the time, your position is either that the sort of general language was sufficient to implicitly suggest a bodily harm, or that their duty to investigate would have triggered it. Do I have that right? I agree with the second thing that you said. I also agree with the first thing that you said. But there's a nuance to it. It's not just that the allegations of anxiety and serious injury are broad enough to encompass physical manifestations, but that they are not so clear as to unequivocally demonstrate the absence of physical manifestations. And frankly, it's wrong. But Glenn alleged anxiety and financial loss, right? It didn't explicitly allege damage to their bodies, right? Well, I would say they did because of the DSM-IV definition of anxiety. And I would also say they did because of the standard that set out in Staples. I don't disagree with, I think, what's animating your question, which is that they could have done more. But they weren't required to do more under Montana law. And, you know, again, part of the reason for this is the insurance company has adjusters. They have lawyers that do nothing but coverage work. And on the other hand, you've got a policyholder who hasn't read Wagner Ellsworth. He's represented, if at all, by personal injury counsel. And that's why the insurance company has an obligation to give its policyholder the benefit of the doubt. And that's why the insurance company has an obligation to investigate. And here all the insurance company had to do was say, you know what, it's not clear from your complaint if there are physical manifestations. Are there? Had they asked that very simple question, they would have learned immediately about the diarrhea and the weight loss, and they would have been required to provide a defense. And the Conleys were not required to do any more than they had already done. And that's what Staples says. And that's how all these cases work together, to make sure there's insurance. Would you explain to me how Staples supports you here, since it seemed to involve an automobile accident with a horse? It didn't seem to involve a- We're not relying on Staples for its facts, but, you know, if you look at Montana law, Staples is the case. It is the case that is cited in every single duty to defend case that the Montana Supreme Court has ever decided. And what it says is that the allegations in the complaint have to be liberally construed. And what it says is that unless there's an unequivocal demonstration that there's no duty to provide coverage, then, again, the duty to defend is activated. And the cases applying Staples, you know, Pablo is one that comes to mind, they interpret allegations in a complaint broadly. And when that legal principle is applied here, I don't think there can be any doubt that the allegations at issue here, and, again, there's three of them. There's anxiety, which was repeated twice. There's a reference to serious injuries in paragraph 64 of the complaint. And there's the subsequent correspondence that says serious toll on the connolly's health. And I don't see how anybody can look at that and say, obviously you have no physical manifestations. And that's enough to give rise to the duty to defend. I've got three minutes left. I'll reserve it for rebuttal and address the issues on cross-appeal at that time. Thank you, Mr. Philp. Is this Mr. Paul Tranel? Is that the right pronunciation? Your Honor, yes, Paul Tranel. Tranel. Good morning. And welcome, and thanks for coming. Thank you. To visit us from Montana. Thank you. As you know, I represent the defendants in this matter, American States Insurance Company and First National Insurance Company of America. Consistent with the briefing, I'll refer to them in this argument this morning as defendants. What the Connellys are asking this court to do in their appeal is conclude that one word in the complaint and the underlying state court action, anxiety is a bodily injury under a commercial general liability policy. In response to the cross-appeal, they're asking this court to conclude that admittedly intentional conduct is an accident. Neither argument makes any sense. You've asked some questions this morning about the timing of the physical manifestations of injury. And as Judge Malloy in the underlying district court opinion noted, he did not consider the affidavits that were submitted by Dale and Karen Connelly in the federal court case because they weren't part of the record that the insurers considered when they made the coverage determination when the tender letter was sent back in July of 2009. So I want to put this case in a little bit better context for all of you. In July of 2008, the Montana Supreme Court issued somewhat of a landmark decision for insurance coverage case law. By the way, the word I thought that they used in their original complaint was debilitating anxiety. No, it simply makes reference to the word anxiety. I see. Yes. Thank you. And to touch upon that, one of the suggestions this morning is that the complaint also alleges serious injuries. But notably, in the district court briefing before Judge Malloy, the issue of serious injuries was not part of the argument that they presented for purposes of triggering coverage. The sole argument was the word anxiety. So going back in time to July. They did send a letter, did they, not saying that the liability has taken a serious toll on their health? They did. There was a letter dated October 1 of 2009 that the Connelly's Council sent to the adjuster handling this case, a woman in Portland named Debbie Altenhoffen. And they sent a letter. It was approximately three or four pages. And they make a reference that it's taken a serious toll on their health. And then the very next period, and then it says the emotional cost. And Judge Malloy considered that letter in its context, that it makes a reference to the emotional cost. It does not indicate any physical manifestation of harm. And let's go a little bit further with that letter. Because in addition to sending the letter that the Connelly's Council provided of October 1, he also sent what he refers to in that letter as, quote, the entire file maintained by Dale and Karen Connelly. It's approximately 90 pages. It's part of the excerpt of the record that was in front of Judge Malloy and which you have here today. There is nothing, not one word in any of those materials that makes any reference to a physical manifestation of harm. I keep keying on that point, a physical manifestation of harm, because as I was just suggesting, in July of 2008, the Montana Supreme Court issued its decision in the Allstate v. Wagner-Ellsworth case. And in that case, the Supreme Court found that there can be situations in which an emotional distress injury with physical manifestations can be a covered bodily injury. And it discussed at length the necessity to make a distinction between a purely emotional injury and those emotional injuries that have a physical manifestation. After deciding Wagner-Ellsworth in July of 2008, the Montana Supreme Court then in Twight Family Partnership in September of 2008 issued another decision. And in that case, it was confronted with allegations in a complaint that alleged emotional trauma. You could take the Connelly's argument and say, well, emotional trauma, when we have emotion, there can be, read liberally, sometimes some type of a physical manifestation. You might cry. You might not sleep well. But notably, the Montana Supreme Court in Twight held that a simple allegation of emotional trauma is not sufficient on its face to trigger coverage as bodily injury under a commercial general liability policy. And then after Twight, we have Judge Malloy's own decision in King v. State Farm. Judge Malloy looked at the Wagner-Ellsworth decision, and he looked at the allegations pled in the King case. And in King, they said they had severe emotional distress, severe emotional trauma, because they had purchased a cabin that didn't turn out the way they wanted it. And they claimed repeatedly in the complaint, severe emotional injuries. Again, liberally construed, those might have a physical manifestation, but nothing was alleged. And therefore, because there was no allegation of a physical manifestation of harm, Judge Malloy and King correctly concluded that there was no covered bodily injury. The same result occurs here. Counsel, if I can interject one short question.  How do you respond to Appellant's argument that putting aside, if their complaint allegation didn't say it, that the adjuster should have made inquiry and that the insurance companies held some duty to inquire about are there physical manifestations from the anxiety? My response to that is that under Montana law, the insurer, its obligation when it receives a complaint, is to look at the complaint to determine whether or not there is coverage triggered under the policy. The insurer does not have a duty to start some type of an investigation or an inquiry when it's reviewing the allegations of the complaint. In Staples, the court said if the insurer is going to conduct an investigation to determine coverage outside of the corners of the complaint, it does so at its own risk. And if it learns something that might trigger coverage, then it better provide coverage. But there isn't any specific inquiry that is required at that point in time. But notably, we go back to the earlier question about the October 1, 2009 letter. The entire file maintained on Dale and Karen Conley was sent to the adjuster, according to Conley's own counsel. Nothing in that letter, or the 89 to 90 pages of materials, suggested any type of a physical manifestation of harm. So when we look at the Supreme Court decisions that we have, Wagner, Ellsworth, Twight, and then Judge Malloy's own decision in King, we see that Judge Malloy correctly concluded here that you need an allegation of a physical manifestation of harm to trigger coverage for an emotional distress type of injury under the definition of bodily injury under a commercial general liability policy in the state of Montana. I'd like to, unless there are further questions on that particular point, turn to the issues concerning the cross-appeal. As I stated at the outset, in response to the cross-appeal, the Conleys would like this Court to conclude that Mr. Stolz's admittedly intentional conduct is an accident. It doesn't make sense. The occurrence question in this case concerns whether Stolz's financial, accounting, and professional services advice is a covered occurrence under this policy. There is no dispute about whether it was intentional, because in their appeal briefs on two separate occasions, the Conleys agree that Stolz's conduct was, quote, clearly intentional. Therefore, this case, the cross-appeal is controlled. Intentional in what sense? In the sense that he wasn't giving his advice, you know, casually or anything like that, so that would be intentional. But it wasn't intentional in the sense that he intended it to have the negative effects that it had, was it? I don't believe there's nothing in the record that suggests that he was intending to injure the Conleys through the advice that he gave. The question is whether or not he intended to give the advice. Did he intend the conduct, which is distinguished from whether he intended the harm? And they've admitted here that he intended the conduct, which is critical because in the Blair v. So if I am a tax advisor and I intentionally say you should take Step X because it will qualify you for a tax deduction under such and such section of the code, and I fail to take account of the fact that that section has been construed in such a way that you would not qualify, is that intentional or negligent? If you intended to give the advice, it's intentional. Even though it's your failure to find out about the other thing that made it bad advice. That's right. I mean, you intended to speak. It's not the competency of the advice that's the crux of the question. The crux of the question is whether or not you intended to give the advice. He didn't act accidentally in speaking or giving advice to the connoisseurs in this matter. Similar in your hypothetical, the advice that you hypothetically were given may be incorrect. It may be deficient. It may be incompetent. But you still intended to give it. It may be negligent.  And that's the issue. Because when you look at the definition of occurrence in this policy, it's identical to the definition of occurrence in Blair. It's identical to the definition of occurrence in Twight. It's identical to the definition of occurrence in King. And in each one of those cases, the court held that where you have occurrence defined exactly the same way as in this case, intentional conduct is not an accident and not a covered occurrence. I guess I'm not understanding what you want as a result of the cross-appeal. Sure. That in the event that you were to reverse Judge Malloy with respect to the issue of anxiety and you determined that there was a covered bodily injury, then you look at the cross-appeal. Well, then it's not really a true cross-appeal. It's another ground for supporting the summary judgment in your favor. In effect, that's right. That's an alternative basis for you to. Am I right that if we were assuming we reject the appeal that the Connellys make and we say there's no physical injury coverage, et cetera, then we don't have to reach the cross-appeal? Right. Cross-appeal is like the suspenders you want to add to your belt. That's right. It's a simple job that you have. If you affirm Judge Malloy on the anxiety issue where he was correct, then you never reach the cross-appeal. That's right. It's just simply an alternative basis for you to support our summary judgment argument. Well, they're both hard issues, so I'm glad you're covering both of them. Yes. So absent any further questions, I'll keep the balance of my time for rebuttal on the cross-appeal issue. Thank you. Mr. Feldman. Thank you, Your Honor. Let's add a minute for Mr. Feldman's time. I want to give you the four minutes you'd planned on since we took up some of your time. And then when we go back to appellee, we'll limit your further two minutes just to the cross-appeal. Thank you, Your Honor. Very, very briefly on the bodily injury issue. Emotional trauma and twite, it's not enough to suggest that there are bodily injuries. It's emotional trauma. Severe emotional distress, it's not enough to suggest that there's physical manifestations. It's emotional distress. Anxiety, it's a whole different ballgame. Anxiety under DSM-IV, under any source that we've been able to find, is always accompanied by physical manifestations. And serious injuries can't be interpreted any other way. That's what a logical reader would conclude or a logical listener would conclude if I, for example, said I suffered serious injuries. Not that I have psychological problems, but that something is physically wrong. And when there is any doubt whatsoever, that's when the duty to investigate comes in. And if the insurer's arguments here are accepted, the duty to investigate effectively disappears. And the same is true, frankly, with regard to this occurrence argument. The coverage disappears. We drive intentionally. I thought the plaintiff was the master of its complaint, not the insurance. The plaintiff is the master of its complaint, but the plaintiff is required to have a short and plain statement. And the plaintiff isn't the policyholder. The plaintiff is the person suing the policyholder. So, yes, I agree with, again, what's animating your question. They could have done better. They absolutely could have done better, but that's why Staples is so important, because it dictates to the insurance company that when you have a policyholder that could have done better, that's not dispositive. And that's why the duty to investigate is important, because it's the insurance companies that know the intricacies of the law and have some obligation to reach out to their policyholder and say, hey, are there any physical manifestations here? And then we're done. It's very simple. And there's never been any dispute that there would be indemnity and there would be defense if the insurance company had just asked that question. So on the occurrence issue, I think the occurrence issue is actually quite simple. And the key to understanding the occurrence issue is in the last paragraph of the Blair decision, because what the court in Blair did was it set up a dichotomy, and it's a very clear dichotomy. When you have language in a policy referring to intended or expected consequences, then there is coverage for intentional conduct with unintended consequences. That's very clear from that final paragraph in Blair. And the court also explains that when you don't have the expected or intended language, then there isn't coverage for expected consequences. Now, the insurance companies here have said, you know what, we've mined the data. We've gone through the record in Blair, and it turns out that there was actually expected or intended language there. The problem is that the Blair court didn't know that, and that is absolutely clear from the Blair court's decision. It's absolutely clear from the analysis in the CIC decision that we submitted just earlier this week, a decision that was rendered seven, eight days ago. If you look at Judge Malloy's analysis, he effectively acknowledges that he made the same mistake in King. And so what we have is a clear rule of law. The rule of law goes all the way back to Phelan, and I think it's fair to say it's uninterrupted and consistent. Where you have that language, expected or intended, the policy covers intentional conduct with unexpected consequences. We have that language in our policy, and so this is a policy under Phelan or under Blair, CIC, Penn Star, any of those cases, this is a policy that covers intentional conduct with unintended consequences. Thank you, Your Honors. Thank you, Mr. Feldman. Now, Pelley, you have two minutes left. Thank you. Or a minute 14. Thank you. You can have two minutes. Thank you, Judge. But limit it to the cross-appeal, please. I will. One of the comments that was just made is that the court in Blair somehow wasn't aware that there was an exclusion clause in that policy for expected or intended injuries. If you're going to make the assumption that the Montana Supreme Court did not have that policy in front of it, which would simply be that an assumption, it really makes no difference, because the court in Blair followed the correct procedure for determining whether or not there was coverage. The court looked at the allegations of the complaint, and then it looked at the language of the policy. The Montana Supreme Court has set forth in the Reby case a three-step process for analyzing coverage. The first step is the insured has the burden of proving that there is a loss that's within the granting language of the policy. Is there a covered loss? That's the insured's obligation. In Blair, the court looked at the definition of occurrence, which is part of the granting language, and concluded that because it was an intentional act and not an accident, there was no coverage. You need not go any further. The exclusion doesn't matter. The Montana Supreme Court has said as much in the Reby case when it lays out the rules for how you analyze it. The same is true in this case. The exclusions don't matter. The fact of this case on the occurrence issue is that they have admitted that Mr. Conley's conduct was intentional. It's not an accident. It's not an occurrence. Blair controls, Twight controls, and King controls. Judge Malloy simply, with all respect, was wrong when he tried to distinguish them on different policy language. We want to correct that error if you get to it, but the bottom line is Blair is the case. Thank you. Thank you, counsel. I want to thank both counsel for appellant and appellee for your very fine arguments. You've both given us a lot to think about. It's a very interesting case. Thank you. And Mr. Trinnell, have a good trip back home. I'll thank all of our Montana visitors for coming to see us. We appreciate it. It's not an easy trek, so we owe you one. Now, the court has two more cases to be argued, but we're going to take a 15-minute recess now. Then after that, we'll come back to hear argument in Mortenson v. President and in Sanders County Republican Center v. Bullock. Thank you.
judges: Rakoff, Schroeder, Gould